UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| IN RE TRAVELZOO INC. SECURITIES LITIGATION | : | Master File No. 11-cv-05531 (GBD) |
| | : | **ECF Case** |
| This Document Relates To All Actions | : | **Electronically Filed** |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DEFENDANTS' REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS
THE CONSOLIDATED AND AMENDED CLASS ACTION COMPLAINT**

SKADDEN, ARPS, SLATE
MEAGHER & FLOM LLP
Jay B. Kasner
Scott D. Musoff
Four Times Square
New York, New York 10036
Phone: (212) 735-3000

*Attorneys for Defendants Travelzoo Inc., Ralph Bartel, Christopher J. Loughlin and Wayne Lee*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ....................................................................................1

ARGUMENT ....................................................................................................3

THE AMENDED COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE ....................3

I. PLAINTIFFS FAIL TO ALLEGE AN ACTIONABLE MISSTATEMENT ....................3

A. None Of The Challenged Statements Was False Or Misleading ............................3

B. Statements Concerning Growth Are Immaterial As A Matter Of Law ..................5

C. Statements Concerning Growth Are Protected By The Safe Harbor Provision ..............................................................................................6

D. Defendants Had No Duty To Disclose Purported Omissions ................................7

II. PLAINTIFFS FAIL TO PLEAD SCIENTER ..........................................................9

A. The Amended Complaint Does Not Contain Particularized Facts Of Conscious Misbehavior Or Recklessness ..............................................................9

B. Plaintiffs Do Not Allege Motive And Opportunity ..............................................11

1. Defendant Lee Did Not Sell Stock ..........................................................12

2. Defendant Bartel Retained 78% Of His Stock ...........................................12

3. Defendant Loughlin's Sales Were Not Suspicious In Timing ..................13

III. PLAINTIFFS FAIL TO ALLEGE LOSS CAUSATION ..............................................13

CONCLUSION ..................................................................................................14

**TABLE OF AUTHORITIES**

**CASES**

*Acito v. IMCERA Group, Inc.*,
47 F.3d 47 (2d Cir. 1995) ....................2, 9, 11

*In re Apple Computer Securities Litigation*,
886 F.2d 1109 (9th Cir. 1989) ....................13

*In re Avon Products, Inc. Securities Litigation*,
No. 05 Civ. 6803(LAK)(MHD), 2009 WL 848017 (S.D.N.Y. Feb. 23, 2009) ....................6, 7, 14

*In re Bear Stearns Cos. Securities Derivative & ERISA Litigation*,
763 F. Supp. 2d 423 (S.D.N.Y. 2011)....................6

*In re Bristol Myers Squibb Co. Securities Litigation*,
586 F. Supp. 2d 148 (S.D.N.Y. 2008)....................14

*Campo v. Sears Holdings Corp.*,
371 F. App'x 212 (2d Cir. 2010)....................11

*City of Roseville Employees Retirement System v. Nokia Corp.*,
No. 10 CV 00967, 2011 WL 7158548 (S.D.N.Y. Sept. 6, 2011) ....................7, 8

*In re Countrywide Finance Corp. Derivative Litigation*,
554 F. Supp. 2d 1044 (C.D. Cal. 2008) ....................8

*Dodona I, LLC v. Goldman, Sachs & Co.*,
No. 10 Civ. 7497(VM), 2012 WL 935815 (S.D.N.Y. Mar. 21, 2012) ....................6

*ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*,
553 F.3d 187 (2d Cir. 2009)....................5

*In re Eastman Kodak Co.*,
No. 6:05-CV-6326-MAT, 2006 WL 3149361 (W.D.N.Y. Nov. 1, 2006)....................5, 13

*In re Focus Media Holding Ltd. Litigation*,
701 F. Supp. 2d 534 (S.D.N.Y. 2010)....................8

*Foley v. Transocean Ltd.*,
No. 10 Civ. 5233(NRB), 2012 WL 933070 (S.D.N.Y. Mar. 20, 2012)....................7

*In re General Electric Co. Securities Litigation*,
No. 09 Civ. 1951(RJH), 2012 WL 90191 (S.D.N.Y. Jan. 11, 2012)....................11

*Glaser v. The9, Ltd.*,
772 F. Supp. 2d 573 (S.D.N.Y. 2011)....11, 12, 13

*Harris v. Ivax Corp.*,
182 F.3d 799 (11th Cir. 1999) ....7

*In re IAC/InterActiveCorp Securities Litigation*,
478 F. Supp. 2d 574 (S.D.N.Y. 2007)....3

*Kiryas Joel Alliance v. Village of Kiryas Joel*,
No. 11 Civ. 3982(JSR), 2011 WL 5995075 (S.D.N.Y. Nov. 29, 2011) ....8, 9

*In re Landry's Seafood Restaurant, Inc. Securities Litigation*,
No. Civ.A. H-99-1948, 2001 WL 34115784 (S.D. Tex. Feb. 20, 2001) ....5

*Menkes v. Stolt-Nielsen S.A.*,
No. 3:03CV409(DJS), 2006 WL 1699603 (D. Conn. June 19, 2006)....5

*Najee-Ullah v. N.Y. City Dep't of Ed.*,
No. 05 CV 6202(GBD), 2008 WL 852475 (S.D.N.Y. Mar. 31, 2008)....9

*In re Oxford Health Plans, Inc.*,
187 F.R.D. 133 (S.D.N.Y. 1999) ....6

*In re Peritus Software Services, Inc. Sec. Litigation*,
52 F. Supp. 2d 211 (D. Mass. 1999) ....9

*Pirelli Armstrong Tire Corp. Ret. Med. Benefit Trust v. Lundgren*,
579 F. Supp. 2d 520, 531 (S.D.N.Y. 2008)....11

*In re Prudential Securities Inc. Ltd. Partnerships Litigation*,
930 F. Supp. 68 (S.D.N.Y. 1996)....6

*San Leandro Emergency Medical Group Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801 (2d Cir. 1996) ....5, 8, 11

*Slayton v. American Express Co.*,
604 F.3d 758 (2d Cir. 2010)....7

*In re Sotheby's Holdings, Inc. Securities Litigation*,
No. 00 Civ. 104(DLC), 2000 WL 1234601 (S.D.N.Y. Aug. 31, 2000)....5

*Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*,
365 F. 3d 353 (5th Cir. 2004) ....4

*In re Take-Two Interactive Securities Litigation*,
551 F. Supp. 2d 247 (S.D.N.Y. 2008)....................................................................9, 14

*In re Vivendi Universal, S.A. Securities Litigation*,
765 F. Supp. 2d 512 (S.D.N.Y. 2011)..........................................................................6

*Western Washington Laborers-Employers Pension Trust v. Panera Bread Co.*,
697 F. Supp. 2d 1081 (E.D. Mo. 2010).......................................................................10

*West Virginia Investment Management Board v. Doral Financial Corp.*,
344 Fed. App'x 717, 721 (2d Cir. 2009) .......................................................................3

*Wexner v. First Manhattan Co.*,
902 F.2d 169 (2d Cir. 1990)..........................................................................................10

## PRELIMINARY STATEMENT

While the Amended Complaint[1] challenges as false and misleading Travelzoo's general, positive statements concerning its emphasis on "growth," Plaintiffs have now recognized they cannot dispute that the Company did grow in every material respect during the Class Period by (1) expanding its product offerings, (2) increasing its number of employees, (3) achieving record revenues and (4) experiencing its "fastest growth rate in 4 years." (Op. Br. 15.)[2] Faced with these undisputable facts, Plaintiffs now attempt to stave off dismissal by asserting in entirely conclusory fashion that Defendants omitted to disclose an "immediate negative impact of Getaways on overall revenue and overall growth" (Pls. Br. 1) and by asserting that "Travelzoo grew less than expected" (*id.* at 13). However, Plaintiffs do not and cannot allege any facts to support the conclusion that Getaways had a "negative" impact, let alone an "immediate" one, on overall growth, and also cannot contest that these growth "expectations" were not statements made by any of the Defendants but rather were made by independent analysts to whom Travelzoo did not provide any guidance. (*Id.* at 19.) Indeed, these same analysts warned investors about the Company's lack of involvement and the lack of reliability of such estimates. (*See* Musoff Decl. Ex. H at 1 ("We note that due to lack of company guidance and limited analyst coverage, earnings estimates are volatile and vary significantly.").)

Thus, not only have Plaintiffs failed to allege with the requisite particularity how or why Travelzoo's challenged statements regarding growth were false or misleading, they also fail to distinguish controlling Second Circuit authority holding that such statements are non-

---

[1] Unless otherwise indicated, all capitalized terms will be ascribed the same definitions as in Defendants' opening Memorandum of Law ("Op. Br."), and all emphasis in record, case and statutory citations is added.

[2] Plaintiffs complain that Defendants "throw every conceivable argument . . . against the wall" (Pls. Br. 1-2), yet fail to recognize that the reason for these arguments is that the Amended Complaint suffers from myriad fatal deficiencies.

actionable because they constitute vague and unverifiable corporate puffery that is immaterial as a matter of law. (Op. Br. 13.) Moreover, many of Travelzoo's forward-looking statements were accompanied by cautionary language that warned of the very risk about which Plaintiffs now complain – that Travelzoo's revenues may "decline or grow more slowly than expected" due to its "inability to expand [] operations in an efficient manner." (*Id.* at 21.) In light of the nature of the challenged statements made by Travelzoo, there was no duty to disclose its testing of Getaways or any purported overlap with its core advertising product. (*Id.* at 19.)

Perhaps recognizing these flaws, the Opposition relies heavily on new disclosures from the Company's most recent Annual Report. (Pls. Br. 8.) Unfortunately for Plaintiffs, these new allegations – which were not alleged in the Amended Complaint and thus cannot be considered in support of their claims – say nothing about the facts and circumstances at the time the challenged statements were made. *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 53 (2d Cir. 1995) ("Mere allegations that statements in one report should have been made in earlier reports do not make out a claim of securities fraud."). Accordingly, even if these disclosures could be considered, they merely underscore the hindsight-based nature of Plaintiffs' claims.

Aside from failing to plead an actionable misstatement or omission, the Amended Complaint should be dismissed with prejudice for the additional reason that Plaintiffs have not and cannot allege a strong inference of scienter:

- **No Conscious Misbehavior or Recklessness (*infra* pp. 9-11):** Defendant Loughlin's statement that Travelzoo experienced "a little bit" of cannibalization does not raise a strong inference that each Defendant knew, as early as March 2011, that his/her general statements about growth and competition were false or misleading. (Op. Br. 26.) Moreover, Plaintiffs' bare-boned allegation that Defendants had access to "up-to-date revenue information" (Pls. Br. 4 n.3) does not describe with particularity (i) what this information consisted of, (ii) whether it was actually accessed by Defendants or (iii) which Defendants viewed it and when. Even if such facts had been adequately alleged, this supposed "revenue information" would only have supported the challenged statements as Travelzoo indisputably achieved record revenues that quarter; and

- **<u>No Motive and Opportunity (*infra* pp. 11-13)</u>:** Plaintiffs allege that Defendants "unloaded $190 million of stock" (Pls. Br. 1) but completely ignore that Defendant Lee – the Company's own CFO – did not sell a single share of stock during the Class Period, nor did any other Travelzoo director. (Op. Br. 5.) Moreover, the circumstances surrounding the stock sales of the other Defendants undermine an inference of scienter. (*Id.* at 27.)[3]

## <u>ARGUMENT</u>[4]

## <u>THE AMENDED COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE</u>

### I. <u>PLAINTIFFS FAIL TO ALLEGE AN ACTIONABLE MISSTATEMENT</u>

#### A. <u>None Of The Challenged Statements Was False Or Misleading</u>

Plaintiffs' securities fraud claim is foreclosed by their failure to allege with particularity how any of the challenged statements were false or misleading. (Op. Br. 14-15.) While they identify general statements emphasizing Travelzoo's desire for growth, it is undisputed that Travelzoo <u>did grow</u> in every material respect during the Class Period. (*Id.* at 1, 14); *In re IAC/InterActiveCorp Sec. Litig.*, 478 F. Supp. 2d 574, 587 (S.D.N.Y. 2007) ("[T]he fact that IAC reported earnings of $1.02 billion – within the projected range – largely eviscerates any unstated claim that the earnings projection was false or misleading."). Indeed, some of the challenged statements specifically refer to the Company's emphasis on "<u>product expansion</u>" (CAC ¶ 81), which is exactly what the Company achieved by launching Getaways.

Plaintiffs cannot save their claims from dismissal by arguing that they "do not allege that Travelzoo failed to grow . . . . Travelzoo grew less than expected" (Pls. Br. 14),

---

[3] Plaintiffs also fail to adequately allege loss causation. As they concede, the Company announced not only the testing of the Getaways product, but that it targeted hotels through the use of vouchers, on June 1, 2011 – nearly two months before the alleged drop in stock price. (Op. Br. 31.) Accordingly, Plaintiffs have not alleged a "corrective disclosure" that revealed to the market the alleged falsity of the Company's statements.

[4] As an initial matter, this motion is governed by the heightened pleading standards of the Reform Act (Op. Br. 12) – not the plausibility standard incorrectly asserted in the Opposition. (Pls. Br. 6.) *W. Va. Inv. Mgmt. Bd. v. Doral Fin. Corp.*, 344 Fed. App'x 717, 721 (2d Cir. 2009) ("the PSLRA requires in this litigation context more than mere plausibility"). Also contrary to their assertion (Pls. Br. 22 n.21), Plaintiffs must plead particularized facts evincing a strong inference of scienter that is cogent and at least as compelling as non-fraudulent inferences. (Op. Br. 4.)

because they explicitly admit that Travelzoo did not provide any guidance to the financial analysts who set those "expectations" (*id.* at 19; CAC ¶ 10). Plaintiffs do not even address – let alone distinguish – Defendants' cases holding that a company cannot be held responsible for analyst predictions where it had no direct involvement (or what courts refer to as "entanglement") in generating them. (Op. Br. 18.)[5] Their only response is to point to a single statement by Loughin that the Company had consistently outperformed analyst expectations, but this statement, which was true at the time it was made (Pls. Br. 19), was not a guaranty of future performance and does not support a conclusion that the Company involved itself in setting analyst expectations. Moreover, analysts themselves acknowledged that Travelzoo did not provide guidance and explicitly warned that as a result, their predictions may not be accurate. (Musoff Decl. Ex. H at 1 ("We note that due to lack of company guidance and limited analyst coverage, <u>earnings estimates are volatile and vary significantly</u>").) While Plaintiffs claim that "Defendants knew full well what analysts were reporting" (Pls. Br. 19), they do not cite a single case to support their suggestion that this is enough to hold Travelzoo responsible for the predictions of independent third parties.

Plaintiffs also continue to assert the strained argument that Travelzoo's statements about its competitors were misleading because the Company failed to disclose that it was acting as its own competitor, even going so far as to cite Webster's Online Dictionary for the definition of "competition." (Pls. Br. 9.) But their offered definition highlights the absurdity of their claim. "Competition," according to Plaintiffs, is defined as "[t]he effort of <u>two or more parties acting independently</u> to secure the business of a third party." (*Id.*) This case does not involve "two or

[5] *See Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 377 (5th Cir. 2004) (dismissing where statements "consist of the opinions and forecasts of the analysts themselves, unaccompanied by any allegation of entanglement or ratification by any defendant").

more parties acting independently" but rather one company offering multiple products.[6] (*See* CAC ¶ 122 ("[W]e don't break out the two businesses [Local Deals and core] . . . . Honestly, we think about it as one business.").)[7]

**B. <u>Statements Concerning Growth Are Immaterial As A Matter Of Law</u>**

Plaintiffs have no response to the controlling Second Circuit law and myriad cases holding that Travelzoo's vague and optimistic statements regarding growth are non-actionable as a matter of law because they are "too general to cause a reasonable investor to rely upon them." *ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 206 (2d Cir. 2009); (*see* Op. Br. 14 & n.6 (citing cases)). Plaintiffs' argument that three squarely on-point Second Circuit decisions are inapposite because of the conclusory statement that "the Complaint contains facts demonstrating that Defendants knew of material information that they omitted from investors" (Pls. Br. 7 n.5) is unavailing. These cases held that unverifiable statements materially identical to those here "cannot constitute actionable statements" as a matter of law. *San Leandro Emergency Med. Grp. v. Philip Morris Cos.*, 75 F.3d 801, 811 (2d Cir. 1996).

Plaintiffs' reliance on an inapposite, out-of-Circuit case (Pls. Br. 10 (citing *In re Landry's Seafood Rest., Inc. Sec. Litig.*, 2001 WL 34115784 (S.D. Tex. 2001)), highlights the Amended Complaint's deficiencies. In *Landry's*, unlike here, the defendants engaged in a "favorable publicity campaign" by repeatedly making <u>specific and concrete predictions</u> regarding

---

[6] Plaintiffs' cases (Pls. Br. 9-10) are entirely inapposite. In *In re Sotheby's Holdings, Inc. Securities Litigation*, 2000 WL 1234601, at *3 (S.D.N.Y. Aug. 31, 2000), the alleged misstatements concerned defendants' external competitors and were deemed actionable based on a price-fixing scheme with one such competitor – it says nothing about the failure of a company to disclose itself as a competitor. *See also Menkes v. Stolt-Nielsen S.A.*, 2006 WL 1699603, at *2-4 (D. Conn. June 19, 2006) (same).

[7] In any event, as the Opposition expressly concedes, Travelzoo's discussion of certain competitors was not intended "to be an exhaustive list." (Pls. Br. 9 n.7); *accord In re Eastman Kodak Co.*, 2006 WL 3149361, at *7 (W.D.N.Y. Nov. 1, 2006) (no misstatement where description of competition did not list every possible competitor).

the company's financial performance that were wildly inaccurate. *Id.* at *2-3, 9. Here, by contrast, Plaintiffs cannot point to a single objectively verifiable statement regarding Travelzoo's growth (Op. Br. 14) and expressly concede that any actual predictions were made by third-party analysts to whom the Company did not provide any guidance (Pls. Br. 19).[8]

### C. Statements Concerning Growth Are Protected By The Safe Harbor Provision

Plaintiffs cannot seriously contend that Travelzoo's forward-looking statements regarding growth are not immunized by the Reform Act's "safe harbor" provision because of meaningful cautionary language accompanying the statements. (Op. Br. 20.) Indeed, in the very same disclosures that Plaintiffs challenge as misleading, Defendants warned investors of precisely the risks about which Plaintiffs complain, including that Travelzoo's "inability to expand [its] operations in an efficient manner could cause . . . revenues to decline or grow more slowly than expected." (*Id.* at 21.)

While Plaintiffs fault Travelzoo for not specifically disclosing that the brand new Getaways product might overlap with the core advertising product (Pls. Br. 33), the cautionary language quoted above "need only cite 'important factors,' and need not mention the 'particular factor that ultimately causes the forward-looking statement not to come true.'" *In re Avon Prods., Inc. Sec. Litig.*, 2009 WL 848017, at *17 (quoting H.R. Rep. 104-369, at 44 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 743).[9] Indeed, in *Avon* – a case strikingly similar to this action – the

---

[8] Similarly, Plaintiffs' other cases (Pls. Br. 13) are wholly inapposite as each involved specific, objectively verifiable statements of fact which were misleading at the time they were made.

[9] Plaintiffs' cases on this point (Pls. Br. 33 n.36) are distinguishable. *Dodona I, LLC v. Goldman, Sachs & Co.*, 2012 WL 935815, at *17 (S.D.N.Y. Mar. 21, 2012) ("boilerplate" risk disclosures were themselves inaccurate); *In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512, 568-69 (S.D.N.Y. 2011) (statements were not forward-looking); *In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*, 763 F. Supp. 2d 423 (S.D.N.Y. 2011) (company's "general boilerplate risk warnings" were verifiably misleading); *In re Oxford Health Plans, Inc.*, 187 F.R.D. 133, 138 (S.D.N.Y. 1999) (statements were not forward-looking); *In re Prudential Sec. Inc. Ltd. P'Ships Litig.*, 930 F. Supp. 68, 72-75 (S.D.N.Y. 1996) ("general warnings" did not disclose full extent of known risk).

court rejected the very same argument Plaintiffs assert here, concluding that defendant's vague statements about growth were immunized by language warning of "the uncertainty of predicting future financial performance" and holding that although the defendant's "warnings do not specifically reference the possibility [of cannibalization between Avon's direct and retail branches], such specificity is not required." (*Id.*)[10]

**D. Defendants Had No Duty To Disclose Purported Omissions**

Plaintiffs fail to allege that Defendants had a duty to disclose the purportedly withheld information regarding Getaways. (Op. Br. 19.) As an initial matter, there are no facts alleged to support the conclusion that Getaways had an "immediate" negative impact on growth. Yet, even assuming it did, the securities laws "do not create an affirmative duty to disclose any and all material information. Disclosure is required under these provisions only when necessary to make statements made, in the light of the circumstances under which they were made, not misleading." *Foley v. Transocean Ltd.*, 2012 WL 933070, at *7 (S.D.N.Y. Mar. 20, 2012) ("Thus, [e]ven with respect to information that a reasonable investor might consider material, companies can control what they have to disclose . . . by controlling what they say to the market.").

As demonstrated above and in Defendants' Memorandum, the Amended Complaint fails to identify a single statement by the Company that was rendered misleading. (*Supra* pp. 3-5; Op. Br. 15.)[11] Plaintiffs also fail to distinguish this Court's recent decision in

---

[10] *Accord Harris v. Ivax Corp.*, 182 F.3d 799, 807 (11th Cir. 1999) (cautions not mentioning the specific risk are still meaningful for safe harbor purposes if "investor has been warned of risks of a significance similar to that actually realized"). Contrary to Plaintiffs' assertion (Pls. Br. 33), the Second Circuit in *Slayton v. American Express Co.*, 604 F.3d 758 (2d Cir. 2010), did not hold that cautionary language must warn of "the exact risk" that materialized. Rather, it held that "a defendant need not include the particular factor that ultimately causes its projection not to come true in order to be protected." *Id.* at 773.

[11] Moreover, Defendants can only be held liable for statements over which they exercised "ultimate authority," and

*City of Roseville Employees Retirement System v. Nokia Corp.*, which is squarely on-point. 2011 WL 7158548 (S.D.N.Y. Sept. 6, 2011). There, plaintiffs alleged that general statements about the company's strong market position and ability to "deliver sales growth" were misleading based on the failure to disclose the risks of "new product delays and competitive markets." *Id.* at *2, 5. This Court held that because plaintiffs could not point to any statements that were rendered misleading based on the withheld information, defendants had no duty to disclose it. *Id.* at *8-9. This holding applies with equal force here, where Plaintiffs cannot cite a single statement rendered false or misleading by the purportedly withheld information.[12]

Moreover, to the extent Plaintiffs suggest that Defendants knew and had a duty to disclose that Travelzoo would not meet the estimates of independent analysts before the end of the second quarter, "courts have been reluctant to impose liability based upon a failure to disclose financial data for a fiscal quarter in progress." *In re Focus Media Holding Ltd. Litig.*, 701 F. Supp. 2d 534, 540 (S.D.N.Y. 2010) (citing cases) ("[T]he disclosure structure set out by the SEC . . . recognizes how unworkable and potentially misleading a system of instantaneous disclosure out [of] the normal reporting periods would be.").

Implicitly recognizing the inadequacy of their original pleading, Plaintiffs rely heavily on "Travelzoo's new, post-Class Period risk disclosure" since the filing of this action to argue that Defendants have "recognized the materiality" of the alleged omissions. (Pls. Br. 8, 20,

---

the group pleading doctrine cannot be used to avoid the Reform Act's pleading standards in this regard. (Op. Br. 23.)

[12] Plaintiffs' cases (Pls. Br. 16 & n.16) are distinguishable because they involved omissions that rendered either a challenged statement of present fact verifiably false or a prediction objectively impossible. Moreover, their reliance on a single case regarding a company's change in business model is inapposite. (*Id.* at 13 (citing *In re Countrywide Fin. Corp. Derivative Litig.*, 554 F. Supp. 2d 1044 (C.D. Cal. 2008).) Here, there are no facts pled that Travelzoo fundamentally altered its business by expanding its voucher product. Indeed, Travelzoo began "testing" Getaways cautiously with less than 200 deals that quarter (and only 40 as of June 1) (CAC ¶¶ 105, 120), and the Second Circuit has held that the mere testing of alternative strategies does not give rise to a duty to disclose. *San Leandro*, 75 F.3d at 811 (no duty to disclose test marketing at reduced pricing despite statements that company was "committed to a strategy of increased prices").

33.) As an initial matter, these allegations were introduced for the first time in Plaintiffs' Opposition and thus cannot be relied upon to support their pleading. *Kiryas Joel Alliance v. Vill. of Kiryas Joel*, 2011 WL 5995075, at *5 (S.D.N.Y. Nov. 29, 2011) ("[I]t is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss."); *Najee-Ullah v. N.Y. City Dep't of Ed.*, 2008 WL 852475, at *3 n.9 (S.D.N.Y. Mar. 31, 2008) (Daniels, J.).[13]

In any event, allegations of subsequent risk disclosures cannot be used to plead that such disclosures should have been made earlier. *Acito*, 47 F.3d at 53 ("Mere allegations that statements in one report should have been made in earlier reports do not make out a claim of securities fraud"); *Take-Two Interactive*, 551 F. Supp. 2d at 292 ("Materiality is determined <u>in light of the circumstances existing at the time</u>").[14]

## II. <u>PLAINTIFFS FAIL TO PLEAD SCIENTER</u>

### A. The Amended Complaint Does Not Contain <u>Particularized Facts Of Conscious Misbehavior Or Recklessness</u>

Plaintiffs also fail to allege particularized facts creating a strong inference that each Defendant was "aware" that Getaways was having a purported "immediate negative impact . . . on overall revenues and overall growth." (Pls. Br. 1.) Indeed, this entirely incorrect allegation is based on (1) Loughlin's comments during the July 21 conference which mention "a little bit of cannibalization and confusion" regarding an early Getaways deal in March 2011 (CAC ¶ 118); and (2) vague allegations that Defendants had access to "up-to-date revenue information." (Pls. Br. 4 n.3.) Neither allegation satisfies the Reform Act's exacting standards.

---

[13] Plaintiffs' citation to *In re Take-Two Interactive Securities Litigation*, 551 F. Supp. 2d 247, 276 (S.D.N.Y. 2008) (Pls. Br. 20 n.21) on this point is unavailing. There, the court took judicial notice of SEC filings <u>to reject</u> plaintiffs' allegations that certain stock sales were unusual – it did not rely on new allegations not pled in the complaint.

[14] *See In re Peritus Software Servs*, 52 F. Supp. 2d 211, 228 (D. Mass. 1999) ("[T]he Class cannot use disclosures made after the date of the statement to show that the company knew that problems existed at the earlier date").

First, Loughlin's comments regarding "a little bit of cannibalization" must be understood in context. (Op. Br. 26.) During the July 21 conference call, Loughlin also noted – and Plaintiffs concede – that this early Getaways deal "went through the roof." (CAC ¶ 119.) Moreover, Loughlin immediately gave other examples where the Getaways product produced greater revenues than the core product. (*Id.* at 26.)[15] Plaintiffs argue that "[o]ne deal is not, however, indicative of which vehicle, Getaways or core travel, on the whole netted more revenue." (Pls. Br. 11.) This is ironic given that Plaintiffs cannot provide a single concrete example (other than abstract hypotheticals (CAC ¶ 8)) of even one Getaways deal that generated less revenues than the Company's core product alone would have.[16]

Second, Plaintiffs' unsupported allegation that "upon information and belief . . . Defendants knew that Getaways revenues were cutting into core travel revenues and growth because they had real-time access to up-to-date revenue information" is woefully inadequate. (*Id.* at 4 n.3.)[17] This allegation utterly fails to allege with particularity:

- what this so-called "revenue information" actually consisted of – for example, the Amended Complaint does not even allege whether the information compared Getaways to the core product in terms of revenue generated;
- who among the "Defendants" had access to this supposed information;

---

15 Plaintiffs accuse Defendants of "cherry pick[ing]" Loughlin's statements during the conference call (Pls. Br. 12), but Defendants merely seek to place his statements in context. This is particularly important given that Plaintiffs focus solely on Loughlin's statement about "a little bit of cannibalization and confusion" yet ignore that Loughlin completed this thought by stating that Getaways "was a smart idea, because what we see" is that Getaways can produce greater revenues for the Company. (Op. Br. 26); *see W. Wash. Laborers-Employers Pension Trust v. Panera Bread Co.*, 697 F. Supp. 2d 1081, 1093 (E.D. Mo. 2010) ("The problem with Plaintiff's argument is that its quotation takes the statement entirely out of context, omitting the sentences that immediately follow it.").

16 *See Panera*, 697 F. Supp. 2d at 1096 (challenged statements not misleading because "there is no way of drawing a distinction between 'cannibalization'—which Defendants expressly admit takes place—and 'systemic cannibalization.'").

17 "Where pleading is permitted on information and belief, a complaint must adduce specific facts supporting a strong inference of fraud or it will not satisfy even a relaxed pleading standard." *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir. 1990).

- whether this information was ever actually accessed by any of the Defendants, much less all of them; or
- if such information was accessed, when it was viewed in relation to the public statements being challenged.

Even if Plaintiffs had adequately alleged that each Defendant had access to real-time information that somehow compared Getaways and core revenues and they actually viewed it, it is uncontested that such data would only have shown that Travelzoo was on its way to record revenues and its "fastest growth rate in 4 years." (Op. Br. 15; CAC ¶ 112.)[18] Thus, the Amended Complaint's bare allegations – which are not corroborated by a single confidential witness – fail to allege with particularity that each Defendant was privy to any information alerting him/her that his/her public statements during the quarter were misleading. *Campo v. Sears Holdings Corp.*, 371 F. App'x 212, 216-17 (2d Cir. 2010) (allegations that corporate officers "could" have received reports are insufficient); *San Leandro*, 75 F.3d at 812 ("Plaintiffs' unsupported general claim of the existence of confidential company sales reports that revealed the larger decline in sales is insufficient to survive a motion to dismiss.").[19]

**B. Plaintiffs Do Not Allege Motive And Opportunity**

Plaintiffs' inadequate theory of motive is based on the stock sales of three Defendants. However, "[i]f scienter could be pleaded on [stock sales] alone, virtually every company in the United States that experiences a downturn in stock price could be forced to defend securities fraud actions." *Acito*, 47 F.3d at 54. Moreover, courts must look at the totality

---

[18] Plaintiffs do not even bother to allege with particularity when in March the Company began testing Getaways or whether this was before the challenged statements were made in Travelzoo's Annual Report dated March 16, 2011.

[19] *See also Pirelli Armstrong Tire Corp. v. Lundgren*, 579 F. Supp. 2d 520, 531 (S.D.N.Y. 2008) (allegation of "special access to financial information" insufficient to plead that defendant "knew or should have known that actual sales for the first quarter would be lower than projected"). Plaintiffs' citation to *In re General Electric Co. Securities Litigation*, 2012 WL 90191, *reconsideration granted in part*, 2012 WL 1371016 (S.D.N.Y. Apr. 18, 2012) (Pls. Br. 27), is misplaced because Plaintiffs have not pled any facts suggesting that Defendants could have predicted as early as March what impact Getaways would ultimately have on overall revenues before the quarter ended. (Op. Br. 25); *San Leandro*, 75 F.3d at 811 ("[D]efendants' lack of clairvoyance simply does not constitute securities fraud").

of circumstances in determining whether sales give rise to a strong inference of scienter. *Glaser v. The9, Ltd.*, 772 F. Supp. 2d 573, 593 (S.D.N.Y. 2011).

**1. Defendant Lee Did Not Sell Stock**

Tellingly, Plaintiffs do not even acknowledge the fact that Lee did not sell a single share of Travelzoo stock during the Class Period. (Op. Br. at 27.) While Plaintiffs go to great lengths to impugn the sales of non-management outside directors Bartel and Urso, the Opposition ignores that Lee – the Company's own CFO – did not make any profit from the alleged fraudulent scheme. As numerous cases have held, Lee's lack of trading eliminates a finding of scienter as to him and undermines any inference as to all of the Defendants. (*Id.*)[20]

**2. Defendant Bartel Retained 78% Of His Stock**

Plaintiffs emphasize the dollar amount of Bartel's sales (which should not be surprising given that Bartel founded the Company and has held its stock since 1998), yet barely acknowledge that he retained 78% of his shares during the Class Period. (Op. Br. 28.) Under Plaintiffs' implausible theory, Bartel held onto over three-fourths of his shares while knowing the Company's stock price was inflated and would fall once the alleged fraud was revealed. *See Glaser*, 772 F. Supp. 2d at 593. Plaintiffs also do not address the fact that none of the non-Defendant Travelzoo directors engaged in any purchases or sales of stock during the Class Period – another fact that undercuts their theory. (Op. Br. 5, 27.) Plaintiffs' explanation that Bartel "clearly wanted to remain the majority shareholder of Travelzoo" (Pls. Br. 26 n.27) is nothing but sheer speculation – far from the particularized facts required by the Reform Act.[21]

---

[20] Lee's resignation – which came nearly three months before the alleged "corrective disclosure" – does not support a finding of scienter and Plaintiffs' conclusory allegations should not be credited. (Op. Br. 27 n.14.) In contrast to Lee, the individuals in Plaintiffs' cases (Pls. Br. 28 n.29) were either fired or resigned under unusual circumstances.

[21] Plaintiffs' cases (Pls. Br. 24-26) involved situations where either (i) each defendant sold significant amounts of stock, (ii) an individual who did not sell stock was dismissed, or (iii) scienter was independently adequately alleged

### 3. Defendant Loughlin's Sales Were Not Suspicious In Timing

Any suspicion surrounding Loughlin's May 2, 2011, stock sales is dispelled by their timing. (Op. Br. 29-30.) As Plaintiffs concede, these sales occurred nearly three months before the alleged "corrective disclosure" and before Loughlin allegedly went on *Mad Money* to fraudulently pump up the price of the Company's stock. (*Id.*; *In re Apple Computer Sec. Litig.*, 886 F.2d 1109, 1117 (9th Cir. 1989) (sales before misrepresentations are inconsistent with theory of securities fraud).)[22] A court must view the alleged facts in their totality, and the fact that Loughlin sold all of his stock prior to these and other alleged misstatements – combined with the lack of trading by Lee and other directors – bolsters a strong inference of non-fraudulent intent.[23]

## III. PLAINTIFFS FAIL TO ALLEGE LOSS CAUSATION

Plaintiffs have not adequately alleged loss causation because the Amended Complaint concedes that the relevant facts regarding Getaways were revealed to the market on June 1 – nearly two full months before any alleged "corrective disclosure." (Op. Br. 32.) While Plaintiffs attempt to draw a distinction between the "existence" of Getaways and its "impact" on revenues, this argument is unavailing. In *Eastman Kodak* – a decision that is squarely on-point and which the Opposition barely addresses – the court held that plaintiffs failed to plead loss causation because the alleged fraud (Kodak's failure to disclose a shift in its business from film to digital photography) had already been announced years earlier, even though its potential impact on Kodak's financial success was not yet revealed. 2006 WL 3149361, at*9. Similarly, here, Travelzoo announced not only the existence of Getaways but that it targeted hotels and

---

through conscious misbehavior or recklessness.

[22] Plaintiffs' accusation that Loughlin instituted a 10b5-1 trading plan because "he learned a lesson and was planning to cover his tracks on any sales of future Travelzoo stock grants" (Pls. Br. 23 n.25) is unsupported conjecture. *See Glaser*, 772 F. Supp. 2d at 592 (use of 10b5-1 plan is not an indication of fraudulent intent).

[23] As set forth in Urso's reply brief, Plaintiffs also fail to plead a strong inference of scienter as to her. (Op. Br. 30.) Any applicable arguments contained therein are incorporated herein.

used the "same booking mechanism" as Local Deals (*i.e.*, vouchers). (Op. Br. 32.) Thus, while Plaintiffs allege that Travelzoo "faced competition from within" (Pls. Br. 7), this information was already available to investors on June 1 even if its alleged impact on Travelzoo's financial performance was not.[24] *Avon*, 2009 WL 848017, at *25 (dismissal appropriate based on "even incomplete references" to allegedly concealed facts).[25] Because the market was already aware of this "competition from within" on June 1, it is clear that the stock drop on July 21 was not caused by the revelation of fraud but by intervening causes – *i.e.*, the announced financial results.[26]

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Amended Complaint be dismissed with prejudice.

Dated: New York, New York
April 30, 2012

Respectfully submitted,

/s/ Jay B. Kasner

Jay B. Kasner (jay.kasner@skadden.com)
Scott D. Musoff (scott.musoff@skadden.com)
SKADDEN, ARPS, SLATE
MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Phone: (212) 735-3000

*Attorneys for Defendants Travelzoo Inc., Ralph Bartel, Christopher J. Loughlin and Wayne Lee*

---

[24] Plaintiffs admit that the June 1 announcement "was significant" because it allowed investors "to put two and two together" after the earnings announcement and immediately realize that the alleged Getaways/core competition is what caused Travelzoo to miss analyst predictions. (Pls. Br. 31.) In other words, they concede that investors were aware of the alleged internal competition but did not know its impact until the revenue information was released.

[25] Several of Plaintiffs' cases (Pls. Br. 29-30) fail to address the previous disclosure of allegedly concealed facts. Their remaining cases are distinguishable. *See In re Bristol Myers Squibb Co. Sec. Litig.*, 586 F. Supp. 2d. 148 (S.D.N.Y. 2008) (previous disclosure did not involve the risks found to be concealed); *Take-Two*, 551 F. Supp. 2d at 247 (the purported previous disclosure came in the form of a speculative newspaper article).

[26] Plaintiffs' control person claims also fail for the reasons stated in Defendants' opening brief. (Op. Br. 34.)